UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERT OLIVER

    VS                          CA. 19-cv-578-WES-PAS

JPMORGAN CHASE BANK, N.A.

## MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order regarding the October 30, 2019 foreclosure sale scheduled for his home. The Plaintiff alleges several defects with this procedure by the Defendant. Each of these arguments indicate that Chase cannot exercise the statutory power of sale.

## THE PLAINTIFF WAS NOT PROVIDED A NOTICE OF FORECLOSURE COUNSELING PRIOR TO THE MAILING OF THE NOTICE OF SALE PURSUANT TO R.I.G.L 34-27-3.1

The Plaintiff has alleged by his affidavit that he was not provided a Notice of Foreclosure Counseling prior to the Notice of Sale being mailed. R.I.G.L 34-27-3.1 clearly states:

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the mortgagee **shall provide to** an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices. . . .

 (c) **Failure of the mortgagee to provide notice to the mortgagor** as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department. (emphasis added)

This statute clearly requires that there be proof that the mortgagor receive this Notice. Defendants suggest that the dictionary definition of provide means deposit in the mail. However the Rhode Island Supreme Court has clearly interpreted the phrase "provide to" as meaning actual delivery within the time limits. In *City of Pawtucket v. Laprade*, 94 A. 3rd 503 (R.I., 2014), the Court reviewed an action under the Law Enforcement Officers Bill of Rights. That statute specifically states:

**§ 42-28.6-5. Conduct of hearing.**

(a) The hearing shall be conducted by the hearing committee selected in accordance with § 42-28.6-4 of this chapter. Both the law enforcement agency and the law enforcement officer shall be given ample opportunity to present evidence and argument with respect to the issues involved. Both may be represented by counsel.

(b) The hearing shall be convened at the call of the chair; shall commence within thirty (30) days after the selection of a chairperson of the hearing committee; and shall be completed within sixty (60) days of the commencement of the hearing. The hearing committee shall render a written decision within thirty (30) days after the conclusion of the hearing. The time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown.

(c) Not less than ten (10) days prior to the hearing date, the charging law enforcement agency shall provide to the law enforcement officer:

(i) A list of all witnesses, known to the agency at that time, to be called by the agency to testify at the hearing;

(ii) Copies of all written and/or recorded statements by such witnesses in the possession of the agency; and

(iii) A list of all documents and other items to be offered as evidence at the hearing.

(d) Not less than five (5) days prior to the hearing date, the law enforcement officer shall provide to the charging law enforcement agency a list of all witnesses, known to the officer at that time, to be called by the officer to testify at the hearing.

(e) Failure by either party to comply with the provisions of subsections (c) and (d) of this section shall result in the exclusion from the record of the hearing of testimony and/or evidence not timely disclosed in accordance with those subsections.

The Plaintiff's affidavit establishes that the mortgagors did not receive a Notice of Foreclosure Counseling and in fact one was never mailed to him    Since the statute requires actual receipt, unlike the Notice of Sale and the Notice of Default under the terms of the mortgage, the Plaintiff has demonstrated a probability of success on the issue of the delivery to them of the Notice of Foreclosure Counseling.

**THE DEFAULT NOTICE WAS DEFECTIVE PRECLUDING ACCELERATION AND EXERCISE OF THE STATUTORY POWER OF SALE**

Before any alleged default or acceleration of the loan was declared, the Lender was required to comply with the Mortgage.  Paragraph 22 of the Mortgage does not authorize acceleration or sale   unless a default letter was sent by the lender with specific language included. This issue was reviewed by Judge Finkle of the Rhode Island Bankruptcy Court in the case of *In Re Demers*, 511 B.R. 233 (Bankr R.I., 2014). In *Demers,* the Court considered a Proof of Claim filed by Wells Fargo through its servicing name of America's Servicing Company.  A notice similar to this notice was sent to the Debtor prior to a foreclosure, which was stopped by the Debtor's Chapter 13 bankruptcy filing.  The Court found that strict compliance with Paragraph 22 of the mortgage was a condition precedent to acceleration and exercise of the statutory power of sale under Rhode Island law.  The Court held:

> Reading the Note and Mortgage as an integrated contract, I find the loan agreement between Ms. Demers and ASC is unambiguous and ASC's compliance with Mtg. Paragraph 22 is a condition precedent to its right to accelerate the Note and pursue its remedy of foreclosure against the Property. That paragraph, in plain

and ordinary terms, states that prior to accelerating the Note ASC is required to give Ms. Demers notice of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Notice without question did not inform Ms. Demers that she had a right to bring an action in court. Quite clearly the Notice did not comply with this prerequisite.

Even so, if I were to determine that the loan agreement read as a whole is "reasonably and clearly susceptible of more than one interpretation" and potentially ambiguous based upon an arguable inconsistency among Note Paragraph 7 and Mtg. Paragraphs 14 and 22, I would still conclude that under the loan agreement ASC is not entitled to recover the Disputed Charges. Any ambiguity in a contract "must be construed against the drafter of the document," in this case ASC (or its predecessor-in-interest). *Haviland,* 45 A.3d at 1260 ( *quoting* *Fryzel,* 385 A.2d at 666-67). Furthermore, "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli,* 790 A.2d 1113, 1115 (R.I.2002). I see no reason this loan transaction should be exempted from this general rule. Indeed, in a transaction such as this between an individual homebuyer and a mortgage lender, there is an imbalance of power such that the more powerful and sophisticated party, ASC, must be held to this standard of good faith and fair dealing.

The Court analyzed the purpose of the provision as a condition and held that:

Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them. Therefore, when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure.

For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default deviated from these prior notices and omitted this contractually mandated notice provision. This defect resulted in the invalidity of the foreclosure process ASC pursued and precludes recovery of its associated costs.

Thus pursuant to the Bankruptcy Court's analysis, this paragraph 22 notice was defective, rendering the foreclosure void.

Under Rhode Island law, if there is any ambiguity in a contract, that ambiguity is a question of fact to be resolved at trial. In the case of *Haviland v. Simmons,* 45 A.3d 1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact."*Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing*Geary v. Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated.
*Haviland*, at pp. 1258-1259

Thus it is inappropriate for this matter to be resolved by a Motion to Dismiss, when at best there is an ambiguity in the terms of the mortgage contract. If there were no ambiguity in the term lender, then the only possible meaning of that term would be the party which owned the note and the mortgage at the time of the declaration of default. In this case, no default notice was sent by HSBC as trustee for any trust. The alleged notice was sent by Wells Fargo operating under the fictitious name of America's Servicing Company, with no reference to any alleged owner of the note or the mortgage. Thus there was no reference to the Lender as required by the terms of the mortgage. Since there was no compliance with the terms of the mortgage, the Lender could not proceed with acceleration and could not exercise the statutory power of sale. Thus any subsequent foreclosure sale was void for contractual non-compliance.

The Court in *Martins v. Federal Housing Finance Agency*, No. 15-cv-235-M-LDA followed established Rhode Island law and held that strict compliance was required for paragraph 22 notices just like any other contracts. *Martins* involved a Judicial Foreclosure in Federal Court. The Court held:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I. 1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.,* No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in insurance contracts); *Dyer v. Ryder Student Transp. Servs., Inc.,* No. 98-4489, 1999 WL 395417, at *2 (R.I. Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in

5

accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").

Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers,* 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

*Martins* was quite specific:

Defendants now seek to foreclose on the Property through an order from this Court, instead of non-judicially. The change of process for the foreclosure, however, does not alleviate compliance with the agreement they made in the Mortgage, including the Paragraph 22 notice requirements. Despite the fact that the judicial foreclosure statute, R.I. GEN. LAWS § 34-11-22, does not expressly require compliance with the Mortgage document, the Rhode Island Supreme Court has stated that "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and that the power of sale "does not exist independently" from the mortgage agreement. *Bucci v. Lehman Bros. Bank, FSB,* 68 A.3d 1069, 1084, 1085 (R.I. 2013). Simply put, if a mortgagee agrees to give a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed. Thus, this Court must review compliance with Paragraph 22 of the Mortgage as a matter of contract law, irrespective of whether Defendants are seeking judicial or non-judicial foreclosure.

The Court granted Summary Judgment to the homeowner stating:

There is no genuine issue as to any material fact concerning whether Fannie Mae complied with the Mortgage Agreement. It did not. At the least, the notices failed, on their face, to specify an exact date by which Ms. Martins could cure default, that she could reinstate the loan after acceleration, and that she has a right to bring court action. With respect to these elements of the notice, there is no plausible way that a jury could find for Defendants, and the notice is indeed material, as it determines whether Defendants have complied with the Mortgage Agreement.

Clearly supporting *Martins* and the notion of strict compliance, the First Circuit in *Thompson v. JPMorgan Chase Bank, N.A*. CA. No. 18-1559 (vacated on other grounds) was decided on February 8, 2019 set forth relevant requirements for strict compliance with the terms of the mortgage, which were not complied with in this case. In *Thompson*, the First Circuit reversed the dismissal by the District Court and reversed a foreclosure sale due to the fact that the purported default notice failed to notify the

mortgagor of the limitations of the right to reinstate. The Court held that due to the strict compliance required under Massachusetts law and the obligation not to provide language in the notice which was deceptive, the failure to advise the mortgagor that reinstatement could occur no later than five days before the scheduled sale was fatally defective. It also held that there was no need to demonstrate prejudice arising from said failure to notify the mortgagor.

*Martins and Dan Harry v. PNC Bank C.A. No. 17-136 WES* (D.R.I., February 26, 2018) have restated pre-existing and established Rhode Island law, which mandated that mortgage contracts must be strictly complied with in order to exercise the statutory power of sale. Failure to do comply with the conditions precedent contained in paragraph 22 of the mortgage would thus invalidate any subsequent foreclosure. The Court in *Dan Harry* held that strict compliance was required and noted that the Rhode Island Supreme Court in *Bucci v. Mortgage Electronic Registration Systems, Inc*. 68 A. 3d 1069(R.I., 2013) had interpreted Rhode Island mortgages applying Massachusetts case law due to the similarities of the statutes authorizing statutory power of sale:

> Also pertinent is that the Rhode Island Supreme Court's decisions regarding mortgage interpretation turn to Massachusetts case law to fill in the interstices in Rhode Island mortgage jurisprudence. See Cruz v. Mortg. Elec. Registration Sys, Inc., 108 A.3d 992, 997 (R.I. 2015) (looking to guidance from Massachusetts to develop law pertaining to standing to challenge mortgage assignments) (citing as guidance Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1 (1st Cir. 2014) (applying Massachusetts law)); Bucci, 68 A.3d at 1087 ("we interpret the term `mortgagee' in our statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts") (citing as guidance Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352 (D. Mass. 2011) (applying Massachusetts law), aff'd, 708 F.3d 282 (1st Cir. 2013), and Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E. 2d 1118 (Mass. 2016)). Accordingly, it is appropriate for this Court to consider persuasive the relevant mortgage-law guidance from Massachusetts. See, e.g., Jose, 54 N.E. 3d at 1132 & n.3 (claim that foreclosure may be rendered invalid by mortgagee's failure to conduct pre-foreclosure face-to-face meeting survives summary judgment); Cook, 31 N.E. 3d at 1131 (mortgagor's claims to restore title and avoid eviction based on

7

mortgagee's failure to comply with HUD regulations before foreclosing survive summary judgment).

A review of the Plaintiff's mortgage and affidavit indicates that there was noit compliance with paragraph 22. A specific date was not provided, the amount was not specific and required the Plaintiff to call Chase. In addition the notice was defective because it did not advise the Plaintiff that failure to cure could lead to acceleration and sale. Instead it stated that failure to cure would result in a foreclosure proceeding, which is judicial in nature. Rhode Island authorizes and servicers of mortgages utilize Judicial Foreclosure under R.I.G.L 34-27-1 and thus this language indicated that the Defendant would seek a judicial foreclosure remedy. It did not indicate that failure to cure could result in the exercise of the statutory power of sale and thus did not comply with the terms of the mortgage, which will render any foreclosure void.

Under paragraph 19, once the default letter mentions options to avoid foreclosure and any payment of the arrearage, it must under paragraph 22 advise the mortgagor that reinstatement can only occur by paying the exact arrearage amount stated in the letter no later than five days before the sale. Failure to so provide this information constitutes deceptive language, not permitted by paragraph 19 or 22 of the mortgage. In this case, Chase included language prohibited by *Thompson*, which told the Plaintiff how to obtain the actual amount of the arrearage and how to make this reinstatement payment, albeit by certified funds, not allowed by the terms of the mortgage. The First Circuit in *Thompson* held:

> Omitting the qualification (that the payment must be tendered at least five days before the foreclosure date) in our view rendered the notice potentially deceptive.

The Plaintiff signed an affidavit indicating that he never received a Notice of Acceleration pursuant to the terms of the mortgage or an acceleration notice of any type. This issues was not addressed by the Defendant. An acceleration letter is an essential component to exercising the statutory power of sale, which is defined and detailed in the mortgage contract.

Failure to cure on or before the date specified in the notice, Lender at Lender's Option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law.
In fact the purported default letter stated:

Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In addition, the mortgage contract allows the mortgagor to reinstate after acceleration in order to avoid the statutory power of sale. It is undisputed that Plaintiff has never received an acceleration notice as required by the terms of her mortgage. The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. No acceleration was declared and as a result the statutory power of sale could not be exercised due to the failure of Defendant to accelerate the mortgage loan by an acceleration letter. The

9

Defendant has not after the cure date indicated to the Plaintiff the amount due on the mortgage loan balance, which has come fully due to the alleged failure to cure the default. Thus this condition precedent was not fulfilled and the Defendant if it conducted a foreclosure sale would only foreclose on the declared arrearage with any surplus paid to the Plaintiff.

The Plaintiff has presented evidence that the Notice of Sale was not mailed by certified mail pursuant to the provisions of R.I.G.L 34-11-22. This failure to comply with the terms of the statutory mandate and precondition to the exercise of the statutory power of sale renders any potential sale void. Thus the Temporary Restraining Order should be granted for this reason.

## CONCLUSION

Plaintiff will be irreparably harmed if the foreclosure sale that is scheduled for October 30, 2019 proceeds. Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendant to comply with the terms of the mortgage renders any attempt to commence the alleged foreclosure by Statutory Power of Sale, void. The Defendants lack the contractual or statutory ability to foreclose. This demonstrates that the Plaintiff has a substantial likelihood of success.

Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief will not disserve the public

interest if imposed. This property is Plaintiff's home, where he resides. Thus a Temporary Restraining Order should be granted and this sale should be cancelled on both the contractual and the statutory grounds.

Respectfully submitted,

ROBERT OLIVER
By his Attorney

October 29, 2019  /s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## CERTIFICATE OF SERVICE

I certify that I emailed a copy of this Memorandum to Sarah Crocker on October 30, 2019.

/s/ John B. Ennis